UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

| | | |
|---|---|---|
| HARRY T. ANDERSON | : | C.A. NO.: 3:12-cv-00785(RNC) |
| Plaintiff | : | |
| V. | : | |
| | : | |
| EASTERN CONNECTICUT HEALTH | : | |
| NETWORK, INC. a/k/a ECHN, INC. | : | |
| Defendant | : | OCTOBER 15, 2012 |

_____

## AMENDED COMPLAINT

**INTRODUCTION**

1   This is an action for money damages and other relief alleging violation of

the Americans with Disabilities Act, 42 U.S.C. § 12101 and the

Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et

seq. and for injunctive relief alleging violation of the Americans with

Disabilities Act, 42 U.S.C. § 12181 et seq.

**THE PARTIES**

2   Plaintiff, Harry T. Anderson, M.D. is an individual residing at all relevant

times in Manchester, Connecticut.

3   Defendants Eastern Connecticut Health Network, Inc. ("ECHN") and

Eastern Connecticut Medical Professionals Foundation, Inc., f/k/a ECHN

Health Services, Inc. ("ECHNHS") until a name change application was

filed on November 17, 2011, are Connecticut corporations with a principal

place of business located at 71 Haynes Street, Manchester, Connecticut.

4  Both corporate Defendants operate from headquarters located at 71
    Haynes Street, Manchester, Connecticut, and made collective decisions
    regarding Plaintiff's employment.  Therefore, Defendants ECHN and
    ECHNHS acted as joint and integrated employers for the purpose of this
    complaint.

5  At all times relevant to this complaint, Defendants have employed more
    than fifty employees.

**JURISDICTION**

6  The United States District Court for the District of Connecticut has subject
    matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 and
    §1343(3) because it asserts claims under the Americans with Disabilities Act, as
    amended, 42 U.S.C. §12101.  The Court also has supplemental jurisdiction over
    the claims brought pursuant to the Connecticut Fair Employment Practices Act,
    Connecticut General Statutes § 46a-60 and pursuant to state common law under
    28 U.S.C. § 1367.


**COUNT ONE: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 0F
1990, 42 U.S.C. §12101, AS AMENDED (AGAINST DEFENDANTS ECHN AND
ECHNHS)**


7  Both corporate Defendants operate from headquarters located at 71
    Haynes Street, Manchester, Connecticut, and made collective decisions
    regarding Plaintiff's employment.  Therefore, Defendants ECHN and

ECHNHS acted as joint and integrated employers for the purpose of this complaint.

8   Plaintiff filed a timely complaint with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission.  The plaintiff received a release of jurisdiction from the CHRO on April 9, 2012 and from the EEOC on April 16, 2012.

9   Plaintiff's date of birth is May 4, 1946.  As of the date of this complaint, Plaintiff is 66 years of age.

10  Plaintiff is an individual who has been diagnosed with major depression and is therefore an individual with a disability as defined by the Connecticut Fair Employment Practices Act ("CFEPA") Connecticut General Statutes § 46a-60, *et. seq.* and the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. 12101, *et. seq.*

11  At all times relevant to this complaint, Defendants were aware of Plaintiff's disability.

12  Plaintiff has been a member of the Active Medical Staff practicing medicine at Manchester Memorial Hospital, which is currently owned and operated by Defendant ECHN for over twenty-five years.

13  Defendant ECHN operates hospitals and other health care facilities at several locations throughout Connecticut, including Manchester Memorial Hospital, which is located at 71 Haynes Street, Manchester, CT 06040.

14 Defendants own and operate hospitals and other health care facilities at

   several locations throughout Connecticut, including Manchester Memorial

   Hospital, located at 71 Haynes Street, Manchester, CT 06040.

15 Defendant ECHN has an organized Medical Staff to which responsibility is

   delegated, and from which accountability is required, by Defendant ECHN's

   governing body for the quality and appropriateness of medical care rendered to

   patients in its hospital(s) and patient care clinics and offices, subject to the

   ultimate authority of Defendant ECHN's governing body.

16 Membership on ECHN's Medical Staff is governed by ECHN's Board of Trustees,

   Defendant ECHN's governing body.

17 Physicians practicing in Defendant ECHN's hospitals are required to practice in

   conformity with the Medical Staff Bylaws, rules and regulations of the ECHN

   Medical Staff, and the ECHN charters, bylaws, policies, rules and regulations of

   Defendant ECHN, its health care facilities and its affiliates.

18 Defendant ECHN and its Medical Staff are required to comply with the

   accreditation standards established by The Joint Commission ("TJC"), an

   accrediting organization for health care facilities.  This requires, among other

   things, compliance with Standard MS.11.01.01 which provides: "The medical

   staff implements a process to identify and manage matters of individual health for

   licensed independent practitioners which is separate from actions taken for

   disciplinary purposes."

19 The ECHN Medical Staff Policies and Procedures include a Physician Health

   Policy which was in effect at all times pertinent hereto.

20 For over twenty-five years, Plaintiff maintained a surgical medical practice in Manchester, CT.  During this time, he maintained clinical staff privileges at Manchester Memorial Hospital and eventually Defendant ECHN when it acquired the hospital.

21 Pursuant to his Medical Staff privileges, Plaintiff was permitted to provide all aspects of medical and surgical care to his patients and to utilize Defendant ECHN's facilities as needed to practice medicine.

22 Defendant ECHN's Medical Executive Committee ("MEC") acts as a self-regulatory body that, among other activities, receives, processes and considers membership applications for privileges and renewal of privileges, and receives and processes complaints brought against members of the Medical Staff by Defendant ECHN's employees, managers, administrators or other members of the Medical Staff.

23 Plaintiff's ability to practice medicine in the Manchester, Connecticut area is largely dependent on his having clinical staff privileges with ECHN.

24 Prior to August 2010, the Plaintiff maintained an independent medical practice.

25 On or about November 2, 2009, Plaintiff made the decision to discontinue his independent medical practice to become an employee of ECHN Health Services, Inc. ("Defendant ECHNHS").

26 In November, 2009, the Plaintiff met with Peter Karl, President and Chief Executive Officer of ECHN, Joel J. Reich, M.D., ECHN's Senior Vice President for Medical Affairs David Neuhaus, M.D., Medical Director, ECHN Health Services, Inc. d/b/a Eastern Connecticut Medical Professionals and engaged in

discussions with Defendants about becoming an employee of Defendant ECHNHS.

27 On January 7, 2010, Plaintiff was placed on Defendant ECHN's Emergency Department call schedule several days per month.

28 In August 2010, the Plaintiff entered into an employment agreement with Defendant ECHNHS whereby he would be employed full time performing surgical and medical and related duties to Defendants ECHNHS and ECHN.

29 The terms and conditions of the Plaintiff's employment with Defendant ECHNHS were outlined in a document entitled "Physician Employment Agreement" ("Employment Agreement") which was signed by the Plaintiff and Kevin G. Murphy, ECHN's Chief Financial Officer and Senior Vice President of Finance on August 2, 2010.

30 One of the conditions of the Plaintiff's employment with Defendant ECHNHS, as outlined in the Employment Agreement, was that he maintain "membership in good standing" with the Defendant ECHN's Medical Staff.

31 In December 2010, Plaintiff began to experience side effects of medications prescribed to him by his treating physician, Dr. Lori Calabrese, MD to treat his condition of depression.

32 On or about January 18, 2011, Dr. Joel Reich, Senior Vice President of Medical Affairs of ECHN and a "Trustee" of ECHNHS, and Dr. Anthony DiStefano, Chief of the ECHN Medical Staff, and Dr. David Neuhaus, Medical Director for ECHNHS, met with Plaintiff.

33  Dr. Reich, Dr. DiStefano, and Dr. Neuhaus jointly demanded that Plaintiff
    take an immediate medical leave of absence pursuant to section 4.6 of the
    ECHN Medical Staff Bylaws, which provides for a leave of absence and
    return conditioned on a letter from the practitioner's treating physician.

34  Plaintiff's physician, Dr. Calabrese, advised Defendants that she believed
    Plaintiff was experiencing side effects of a change in medications she has
    prescribed to Plaintiff.

35  By letter dated January 19, 2011, Plaintiff sought a leave of absence from
    his employment.

36  At the time of Plaintiff's January 19, 2011 request for a leave of absence,
    ECHNHS management informed staff that Plaintiff would be retiring.

37  At the time Defendants acknowledged Plaintiff's request for leave of
    absence, Defendants advised Plaintiff that he would be subject to
    conditions of return that were in excess of those set forth in the ECHN
    Medical Staff Bylaws.

38  ECHNHS also engaged in discussions to close Plaintiff's office and cancel the
    lease that was due to renew in July 2011 while Plaintiff was on a leave of
    absence.

39  On March 18, 2011, after Plaintiff underwent comprehensive medical
    examination and testing which demonstrated all of his functions, physical,
    neurological, and mental, were within normal limits, Plaintiff advised Dr. Neuhaus
    that he was cleared to return to practice in an office setting.

40  This information was communicated to Dr. Neuhaus on March 18, 2011, at which

time Plaintiff signaled his intent to return to work to perform procedures in the office setting.

41  Dr. Neuhaus sought a letter from Plaintiff's treating physician, Dr. Calabrese, on March 22, 2011.

42  By letter dated March 23, 2011, Dr. Neuhaus also sought an additional explanation with regard to conditions that accompanied Plaintiff's return to practice in the office setting.

43  All of Dr. Neuhaus' questions were answered by return correspondence dated March 25, 2011.

44  On March 31, 2011, Dr. Calabrese stated that Plaintiff was able to return to practice medicine without restriction.

45  On April 7, 2011, Dr. Neuhaus agreed to extend Plaintiff's leave of absence based on the expectation that additional testing would allow Plaintiff to return to practice in surgery at the hospital, along with practice in the office setting.

46  In the interim, Plaintiff sought a restructuring of his job in the short term to incorporate monitoring and the ability to perform procedures in the office setting. Plaintiff also sought a partial leave of absence until the details associated with the process of restoring his full ability to operate in the hospital setting was accomplished through negotiation with the MEC.

47  Despite Plaintiff's requests for job restructuring or a partial leave of absence, Dr. Neuhaus made no effort to accommodate Plaintiff.

48  Even though Dr. Neuhaus indicated that he would continue to pursue information in accordance with Plaintiff's release and authorization to do so, Dr. Neuhaus did

not seek a meeting with Plaintiff's agent or with the representatives of the Medical Staff.

49 No further attempts were made to accommodate Plaintiff by ECHNHS, including allowing Plaintiff to return to an office practice, or to engage him or his representatives in a good faith discussion in April, 2011.

50 On April 27, 2011, the ECHN MEC met to discuss Plaintiff's return to surgical practice.

51 The ECHN MEC imposed unrealistic and burdensome conditions for Plaintiff's return to full practice.

52 On May 3, 2011, Plaintiff's agent met with Lisa Boyle, counsel for Defendants, and HR Director Deb Gogliettino to discuss arrangements that would allow him to return to an office practice in the brief period before Plaintiff would be fully restored to perform full surgical procedures in the operation room.  ECHNHS failed to act in good faith in seeking ways to accommodate Plaintiff's disability following this meeting.

53 In a letter dated May 4, 2011 Mr. Karl informed Plaintiff that the MEC had voted to impose a performance improvement plan, a reduction of clinical privileges and a corrective action constituting "adverse action" against his Medical Staff privileges as a part of the return to work process.

54 The imposition of a Corrective Action in Plaintiff's case was inconsistent with the requirements of the Medical Staff Bylaws.

55 On May 6, 2011, Ms. Boyle informed Plaintiff's counsel that Defendants were going to proceed as it would with any other employee in a similar situation.  Ms.

Boyle threatened that now that Plaintiff's PTO had run out, his leave would be without pay unless or until there was an agreement – meaning an agreement to retire with three months of severance.

56  Defendant ECHN had already made the decision that the Plaintiff would not be returning to his surgical duties and was therefore not engaging in good faith in discussions regarding his return to medical and surgical practice.

57  Throughout May 2011, Plaintiff, through his attorney, repeatedly attempted to engage Defendant ECHN in good faith discussions to find a reasonable accommodation based on HAVEN's suggestions so that his clinical privileges could be restored and he could return to medical and surgical practice.

58  As of May 31, 2011, Plaintiff was still awaiting the ECHN MEC's reconsideration of a plan that would reasonably deal with Plaintiff's request for an accommodation.

59  At no time did Plaintiff or anyone on his behalf express a desire to cease or delay the effort to accommodate Plaintiff's disability.

60  Plaintiff consistently expressed to Defendants a desire to return to an office practice with assurances that he could service patients for routine office procedures. Despite Plaintiff's willingness to do so, Defendants refused to discuss other possible reasonable accommodations.

61  Despite numerous attempts to meet with Defendants to discuss reasonable accommodations, including Plaintiff's return to work in the office setting, Defendants refused to discuss the matter.

62  The conditions insisted upon by the MEC for the Plaintiff's return from his leave

of absence violated the Defendant ECHN's Bylaws and the agreement between

Defendant ECHN and the Plaintiff when he voluntarily took medical leave in

January 2011.

63 On May 19, 2011, despite the absence of any evidence demonstrating that the

conditions were necessary, Defendant ECHN informed the Plaintiff that the

conditions presented by the MEC were non-negotiable

64 In a letter dated June 2, 2011, Kevin Murphy notified the Plaintiff that his

employment with ECHNHS was going to be terminated, effective June 3, 2011

because of the restrictions placed on his clinical privileges by Defendant ECHN.

Additionally, Defendant ECHNHS informed the Plaintiff that it would discontinue

paying the premiums for his professional liability insurance on that date.

65 Kevin Murphy's signed letter terminating Plaintiff's employment with ECHNHS

above language identifying him as "Treasurer/ EVP Network Development

ECHN,"

66 At the time Kevin Murphy signed the letter terminating Plaintiff's employment on

June 2, 2011, he also held the positions of Senior Vice President of Finance and

Chief Financial Officer of ECHN.

67 The termination letter contains false statements that demonstrate Defendants'

bad faith and obstruction of the interactive process to identify reasonable

accommodations that would have allowed Plaintiff to return to work.

68 On June 14, 2011, Defendant ECHN notified the Plaintiff that on May 25, 2011,

the Defendant ECHN's Board of Trustees had approved his request for

reappointment and clinical privileges to the Active Medical Staff in the

Department of Surgery, subject to the same unreasonable conditions imposed by the MEC.

69  As a direct result of Defendant ECHN's refusal to restore the Plaintiff's clinical privileges, his employment was terminated, resulting in the loss of his only source of income and associated insurance benefits.

70  By letter dated June 17, 2011, Plaintiff's attorney again informed Defendant ECHN that Plaintiff was still seeking a reasonable accommodation to facilitate his return to the Medical Staff.

71  On June 20, 2011, Defendant ECHN stated that it would not consider any reasonable accommodation.

72  By letter dated June 22, 2011, Plaintiff's attorney again requested a reasonable accommodation in order to allow him to restore his clinical privileges.

73  On June 22, 2011, the ECHN notified the Plaintiff that its MEC had met on June 20, 2011 and approved a plan for his return from his leave of absence.

74  The MEC's plan imposed unreasonable and excessive conditions.

75  Defendant ECHN waged a systematic campaign to block the Plaintiff's return to the Medical Staff and permanently deprive him of his clinical privileges.

76  Defendant ECHN never made any genuine attempt to accommodate the Plaintiff's disability nor did it engage in a good faith interactive process with him or his attorney as Defendant ECHN and its representatives had pre-determined that it would not restore the Plaintiff's privileges.

77  Defendant ECHN's actions were motivated by a desire to permanently deprive the Plaintiff of his Medical Staff privileges and furthered by a calculated effort

involving Plaintiff's employer Defendant ECHNHS to do so.

78  Defendant ECHN failed to afford Plaintiff the process and procedures set forth in its Medical Staff Bylaws.

79  Defendant ECHN waged a systematic campaign to block the Plaintiff's return to the Medical Staff and permanently deprive him of his clinical privileges.

80  Defendant ECHN never made any genuine attempt to accommodate the Plaintiff's disability nor did it engage in a good faith interactive process with him or his attorney as Defendant ECHN and its representatives had pre-determined that it would not restore the Plaintiff's privileges.

81  Defendant ECHN's actions were motivated by a desire to permanently deprive the Plaintiff of his Medical Staff privileges and furthered by a calculated effort involving Plaintiff's employer Defendant ECHNHS to do so.

82  Defendants failed to engage Plaintiff in a good faith interactive process to assist him in identifying reasonable accommodations that could allow Plaintiff to perform the essential functions of his position.

83  Had Defendants not obstructed or delayed the interactive process, a reasonable accommodation would have been identified and implemented that would have allowed Plaintiff to return to the workplace, including job restructuring, a partial leave of absence, or a definite unpaid leave of absence connected to the ECHN MEC's removal of the unrealistic and burdensome conditions that prevented Plaintiff's full return to practice.

84  As a result of Defendants' failure to engage Plaintiff in a good faith interactive process, Plaintiff was forced to exhaust 248 hours of PTO in order to continue to

earn an income.

85  As a result of Defendants' actions, Plaintiff has been, and continues to be, prevented from practicing medicine.

86  Defendants' actions have caused Plaintiff to suffer severe emotional distress resulting in physical and emotional injury including but not limited to exacerbation of preexisting cardiovascular condition.

87  Based on the foregoing, the Defendants have discriminated against Plaintiff on account of his disability in violation of the Americans with Disabilities Act 0f 1990, 42 U.S.C. §12101, as amended by the ADA Amendments Act of 2008.

88  As a result of Defendants' discrimination, Plaintiff has suffered a loss of wages and benefits pursuant to the terms of his employment agreement.  Plaintiff also lost the opportunity to serve a chair of his department and the additional payment associated with that position.  Plaintiff has also suffered emotional distress, loss of enjoyment of life based on the destruction of his medical career, and harm to his reputation.  Plaintiff has been compelled to hire attorneys to protect his right to be free of discriminatory actions.

**COUNT TWO: VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, 29 U.S.C. § 621, *ET. SEQ.* (AGAINST ALL DEFENDANTS).**

1-87    Paragraphs 1 through 86 and 88 of Count One are hereby incorporated by reference and made paragraphs 1 through 87 of Count Two as though more fully set forth herein.

88. Based on the foregoing, the Defendants have discriminated against Plaintiff on account of his age in violation of the Age Discrimination in Employment Act of 1967, 29

U.S.C. § 621, *et. seq.*

**COUNT THREE: DISABILITY DISCRIMINATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONNECTICUT GENERAL STATUTES § 46A-60 *ET. SEQ.* (AGAINST ALL DEFENDANTS)**

1-87   Paragraphs 1 through 86 and 88 of Count One are hereby incorporated by reference and made paragraphs 1 through 87 of Count Two as though more fully set forth herein.

88.    Based on the foregoing, the Defendants have discriminated against Plaintiff on account of his disability in violation of the Connecticut Fair Employment Practices Act, Connecticut General Statutes § 46a-60 *et. seq.*

**COUNT FOUR: AGE DISCRIMINATION VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONNECTICUT GENERAL STATUTES § 46A-60 *ET. SEQ.* (AGAINST ALL DEFENDANTS)**

1-87   Paragraphs 1 through 86 and 88 of Count One are hereby incorporated by reference and made paragraphs 1 through 87 of Count Two as though more fully set forth herein.

88.    Based on the foregoing, the Defendants have discriminated against Plaintiff on account of his age in violation of the Connecticut Fair Employment Practices Act, Connecticut General Statutes § 46a-60 *et. seq.*

**COUNT FIVE: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,**

**42 U.S.C. § 12181 *ET SEQ.* (AGAINST DEFENDANT ECHN)**

1-87   Paragraphs 1 through 86 and 88 of Count One are hereby incorporated by reference and made paragraphs 1 through 87 of Count Two as though more fully set forth herein.

88.   Defendant ECHN is a public accommodation within the meaning of 42 U.S.C. § 12181 *et seq.*

89.   Defendant ECHN is subject to the requirements of 42 U.S.C. § 12181 et seq.

90.   Plaintiff was denied the opportunity to participate in or benefits from Defendant ECHN's services, programs, or activities and/or was otherwise discriminated against by Defendant ECHN by reason of his disability.

91.   Based on the foregoing, Defendant ECHN has discriminated against Plaintiff on account of his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

**COUNT SIX: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(AGAINST DEFENDANT ECHN)**

1-87   Paragraphs 1 through 86 and 88 of Count One are hereby incorporated by reference and made paragraphs 1 through 87 of Count Two as though more fully set forth herein.

88.   Defendant ECHN engaged in unreasonable conduct toward Plaintiff in accusing him of incompetence, in denying him the ability to practice

medicine and to exercise his medical privileges, in subjecting the

reappointment of Plaintiff's medical privileges to unreasonable restrictions,

and in subjecting Plaintiff's medical privileges to corrective action.

89.   Defendant ECHN should have realized that its conduct involved an

unreasonable risk of causing Plaintiff emotional distress.

91.   Defendant ECHN's conduct toward Plaintiff caused Plaintiff to suffer

emotional distress.

**WHEREFORE**, Plaintiff claims judgment in his favor against all Defendants jointly

and severally and a trial before a JURY, and

1.   Legal and equitable relief pursuant to Connecticut General Statutes § 46a-104;

2.   Economic and non-economic damages in the form of lost wages, benefits, harm

to reputation, emotional distress, and loss of enjoyment of life associated with the

destruction of Plaintiff's medical career;

3.   Interest pursuant to Connecticut General Statutes § 37-3a;

4.   Liquidated damages pursuant to 29 U.S.C. § 626(b)

5.   Punitive damages pursuant to Connecticut General Statutes § 46a-104 and 42

U.S.C. § 1981a; and

6.   Attorneys' fees pursuant to Connecticut General Statutes § 46a-104, 29 U.S.C. §

216(b) and 42 U.S.C. §12117.

7.   Pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et

seq.*, Plaintiff seeks the following relief:

A.  Injunctive Relief

1   An immediate permanent injunction declaring that the Defendant
    ECHN discriminated against and harassed the Plaintiff in violation of
    Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et
    seq.*;

2   An immediate permanent injunction enjoining the Defendant ECHN
    from discriminating against the Plaintiff and against similarly-situated
    physicians on the basis of disability with regard to Medical Staff
    privileges;

3   An immediate permanent injunction ordering that the Plaintiff's active
    Medical Staff privileges be reinstated, consistent with the
    recommendations of the HAVEN Program, effective immediately;

4   An immediate permanent injunction ordering that Defendant ECHN
    issue a public apology to the Plaintiff; and issue a public retraction of
    all falsehoods, misstatements and representations issued, published,
    or made about the Plaintiff in connection with the allegations
    Defendant ECHN has made against the Plaintiff, in as public a
    manner as that in which Defendant ECHN made the allegations
    against the Plaintiff as set forth in the Complaint.

5   An immediate permanent injunction ordering that the Defendant
    ECHN pay Plaintiff's reasonable attorneys' fees—pursuant to 42
    U.S.C. § 12205—incurred in connection with all of the Plaintiff's
    efforts to return to active practice on the ECHN Medical Staff,

including but not limited to his dealings with Defendant ECHN to secure permission to return to practice, all levels of internal administrative proceedings conducted pursuant to the ECHN Medical Staff Bylaws, external administrative agency proceedings, civil litigation, and any related appeals; and

6   An immediate permanent injunction ordering that the Defendant ECHN pay Plaintiff's reasonable costs of litigation—pursuant to 42 U.S.C. § 12205—incurred in connection with all of the Plaintiff's efforts to return to active practice on the ECHN Medical Staff, including but not limited to his dealings with Defendant ECHN to secure permission to return to practice, all levels of internal administrative proceedings conducted pursuant to the ECHN Medical Staff +, external administrative agency proceedings, civil litigation, and any related appeals.

B.  Other Relief

1    That this Court retain jurisdiction over this action to ensure Defendant

      ECHN's full compliance with the above-mentioned statutes; and

2    Such other legal and equitable relief as the Court may deem just and

      proper.

                                    PLAINTIFF
                                    HARRY T. ANDERSON, M.D.


                          By:    s/Jacques J. Parenteau_____
                                       Jacques J. Parenteau (#ct09771)
                                       Madsen, Prestley & Parenteau, LLC
                                       105 Huntington Street
                                       P.O. Box 1631
                                       New London, CT 06320
                                       Tele:  (860) 442-2466
                                       Fax:  (860) 447-9206
                                       jparenteau@mppjustice.com


                                 and

                          By:    s/Mary Alice Leonhardt_____
                                       Mary Alice Moore Leonhardt (ct #02966)
                                       Moore Leonhardt & Associates LLC
                                       102 Oak Street
                                       Hartford, CT 06106
                                       Tel:   860-727-8874
                                       Fax:  860-525-2194
                                       ma@mooreleonhardt.com

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that on October 15, 2012, a copy of the foregoing Amended Complaint, filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

__s/_____
Jacques J. Parenteau