```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

HARRY T. ANDERSON,              :
                                :
     Plaintiff,                 :
                                :
     v.                         :     CASE NO. 3:12CV785(RNC)
                                :
EASTERN CT HEALTH NETWORK,      :
INC. et al.,                    :
                                :
     Defendants.                :
```

RULING ON MOTION TO COMPEL

Plaintiff brings this action alleging that defendants unlawfully terminated his employment on the basis of his age and disability. After many discovery motions and multiple extensions of deadlines, discovery closed in July 2013. In August 2013, with the court's leave (doc. #133), plaintiff filed a Motion to Compel deposition testimony (doc. #135) over defendants' assertion of privilege. District Judge Robert N. Chatigny referred the motion to the undersigned. (Doc. #137.) For the reasons set forth below, the motion is denied.

A. Background

Plaintiff, a physician, was employed by defendants and had surgical privileges at their hospital. In January 2011, he took a leave of absence allegedly due to side effects from medication for depression. After comprehensive physical, neurological and mental examination and testing, a third-party evaluator ("HAVEN") recommended that he could return to work but not at

1

full capacity.  Plaintiff and defendants engaged in discussions regarding their employment relationship.  Defendants sought advice from outside counsel Lisa Boyle, a health care attorney.  Plaintiff retained Attorney Mary Alice Moore Leonhardt.

On May 31, 2011, four of defendants' executives attended a meeting to discuss plaintiff's situation:  Kevin Murphy, Executive Vice-President and Treasurer; Peter Karl, Chief Executive Officer; Deborah Gogliettino, Senior Vice President and Chief of Human Resources; and Dr. David Neuhaus, Medical Director of Health Services.  Also attending were Attorney Boyle and Stephen Aronson, an employment law attorney from the same firm.  On June 2, 2011, Karl, Gogliettino and Attorneys Boyle and Aronson met with two members of the Board of Directors.  That same day, defendants issued a termination letter to plaintiff signed by Murphy.  (Doc. #140-1 at 2-3.)

Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission.  After receiving releases of jurisdiction in April 2012, plaintiff commenced this action in the state court.  In May 2012, defendants removed the case to this court.

In June and July 2013, plaintiff's counsel took the depositions of Murphy, Karl, Gogliettino and Neuhaus.  The deponents declined to answer certain questions on the basis of

2

the attorney-client and work product privileges.  Plaintiff moves to compel responses to the following questions:

1. Who spoke at the May 31 meeting?[1]  (See Murphy Dep. at 78, 80-81.)

2. Who made a recommendation at the May 31 meeting, such as whether Dr. Anderson should be continued?  (See Murphy Dep. at 79; Neuhaus Dep. at 34; Gogliettino Dep. at 81-82.)

3. Did anyone make a presentation of the facts at the May 31 meeting?  (See Karl Dep. at 34.)

4. Did Lisa Boyle convey the contents of a May 31 email from plaintiff's lawyer Mary Alice Moore Leonhardt?  (See Gogliettino Dep. at 198-199; Murphy Dep. at 83, 88; Karl Dep. at 35.)[2]

5. Were the following subjects discussed at the May 31 meeting?

   a. Reasonable accommodation?  (See Murphy Dep. at 78; Karl Dep. at 34.)

---

[1] Although plaintiff's brief conflates the May 31 and June 2 meetings, the deposition questions at issue sought information pertaining only to the May 31 meeting.  (See doc. #135 at 5 and attachments.)

[2] Question 4 is moot because defendants have confirmed that their attorney did convey to them the May 31 email from plaintiff's counsel.  Nonetheless, plaintiff goes on to argue that because defendants and their counsel acquired the email from a third party — that is, plaintiff's attorney — he is entitled to discover not only the contents of the email but also any conversation related to the email.  This argument overstates the principle that "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged."  P. & B. Marina, Ltd. Partnership v. Logrande, 136 F.R.D. 50, 56 n.5 (E.D.N.Y. 1991) (emphasis added and citation omitted); see also In re Grand Jury Proceedings, No. M-11-189, 2001 WL 1167497, at *23-24 (S.D.N.Y. Oct. 03, 2001) (discussing line of cases).  In other words, although the contents of the email are not privileged, the legal advice sought and received from counsel with respect to the email remains privileged.

3

   b. Extending Dr. Anderson's unpaid leave of absence for 30 or 60 days?  (See Murphy Dep. at 78-79.)

   c. Financial consideration in keeping his office open?  (See Murphy Dep. at 79.)

   d. Any particular accommodation considered, including accommodation related to his privileges being delayed while the matter was worked out?  (See Murphy Dep. at 83.)

   e. Whether it would be appropriate to meet with Dr. Anderson before the decision was made to terminate him?  (See Murphy Dep. at 84-85; Karl Dep. at 36.)

   f. Dr. Anderson's retirement or potential retirement?  (See Murphy Dep. at 85; Karl Dep. at 33.)

   g. Dr. Anderson's proposed plan for return to full privileges as outlined in the email from Mary Alice Moore Leonhardt dated May 31, 2011?  (See Murphy Dep. at 87.)

   h. Whether Dr. Anderson would be entitled to any further accommodation beyond the unpaid leave of absence he was currently taking?  (See Gogliettino Dep. at 83.)

   i. The proposal that HAVEN made to place Dr. Anderson in an office setting?  (See Karl Dep. at 33-34.)

   j. The Americans with Disabilities Act in general?  (See Karl Dep. at 34.)

6. Were David Neuhaus or Deborah Gogliettino consulted about defendants' answer to plaintiff's allegation at ¶ 18 of his CHRO affidavit?  (See Neuhaus Dep. at 101; Gogliettino Dep. at 57-59.)

7. Was it Gogliettino's or Dr. Neuhaus's idea to use the words "essential functions" in a letter signed by Dr. Neuhaus?  (See Gogliettino Dep. at 133-134.)[3]

---

[3]This question was asked during the deposition of Gogliettino.  It is moot because she answered it.  (Gogliettino Dep. at 134:6-9.)

4

> 8. Why did Attorney Boyle ask Deborah Gogliettino to attend a meeting with Maureen Dinnan from HAVEN concerning plaintiff?  (See Gogliettino Dep. at 66-67.)

Defendants object that these questions seek to elicit confidential communications that are protected by the attorney-client and work product privileges.

   B.   Discussion

A motion to compel is entrusted to the sound discretion of the district court.  In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003).

   1.   Attorney-Client Privilege

Defendants assert that the testimony in question is protected by the attorney-client privilege.  As summarized by the Second Circuit,[4]

> [t]he attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. . . .  [W]e construe the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." . . . .  The burden of establishing the applicability of the privilege rests with the party invoking it.

In re County of Erie, 473 F.3d 413, 418-19 (2d Cir. 2007) (citations omitted).  "A party invoking the attorney-client privilege must show (1) a communication between client and

---

[4]Federal law governs the claim of privilege in this instance because it supplies the rule of decision on plaintiff's claims.  See Fed. R. Evid. 501 (in civil case, federal law governs privilege unless state law supplies the rule of decision for the claim or defense).

5

counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." Id. at 419.  The party invoking a privilege bears the burden of establishing all of the elements. United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997).

      a.  Business Advice versus Legal Advice

Plaintiff first argues that the contributions of Attorneys Boyle and Aronson to the May 31 meeting were business advice, not legal advice, and therefore not privileged.  "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. . . .  It requires a lawyer to rely on legal education and experience to inform judgment. . . .  But it is broader, and is not demarcated by a bright line." Id. at 419-20 (citations omitted).  To differentiate between business and legal advice, courts "consider whether the predominant purpose of the communication is to render or solicit legal advice." Id. at 420.

> So long as the predominant purpose of the
> communication is legal advice, [business]
> considerations and caveats are not other than legal
> advice or severable from it.  The predominant purpose
> of a communication cannot be ascertained by
> quantification or classification of one passage or
> another; it should be assessed dynamically and in

6

>light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.

Id. at 420-21.

The issue of whether a confidential communication between client and counsel is generated for the purpose of obtaining or providing legal assistance often arises in the context of communications with corporate in-house lawyers who also serve as business executives.  Id. at 419.  Attorneys Boyle and Aronson were neither business executives nor defendants' employees.  At the time of the May 31 meeting, plaintiff had threatened legal action.  Both parties had retained lawyers.  The lawyers differed in their interpretations of the recommendations of the third party who evaluated plaintiff's ability to return to work. Attorney Boyle brought Attorney Aronson, an employment law specialist, to the May 31 meeting.  These facts all indicate that the predominant purpose of the communications in question was to obtain and provide legal advice.  See, e.g., Lolonga-Gedeon v. Child & Family Services, No. 1:08CV300A(F), 2012 WL 1714914, at *4 (W.D.N.Y. May 15, 2012) (attorney-client privilege protected pre-termination communications between executive and outside counsel regarding how to avoid being accused of employment discrimination in event defendant decided to terminate plaintiff's employment); Boudreau v. Gonzalez, No.

3:04CV1471(PCD), 2006 WL 3462655, at *4 (D. Conn. Nov. 29, 2006) (attorney-client privilege protected pre-termination communications between employer and outside counsel who was retained to provide legal advice to regarding employee's accusation of harassment); cf. Ashkinazi v. Sapir, No. 1:02CV002(RCC)(MHD), 2003 WL 76986, at *1 (S.D.N.Y. Jan. 09, 2003) (attorney-client privilege protected pre-termination communications between defendant and in-house counsel regarding legal implications of plaintiff's accusations of misconduct and contract dispute but not counsel's business assessment of plaintiff's performance). The attorney-client privilege therefore shields the substance of the communications at the May 31 meeting.

      b.  Subject Matter versus Substance

Plaintiff next argues that even if the substance of the communications is privileged, he is entitled to discover the general subject matter and the underlying facts to test defendants' assertion of privilege.

"[T]he attorney-client privilege protects communications rather than information; the privilege does not impede disclosure of information except to the extent that that disclosure would reveal confidential communications." In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984). In other words, "the contents of

communications are privileged, but information relating to them, such as the communications' subject matter, is not." Haddock v. Nationwide Financial Services, Inc., No. 3:01CV1552(SRU), 2009 WL 3734059, at *1 (D. Conn. Nov. 06, 2009). The party seeking disclosure is entitled to inquire into the general subject matter of the communications to determine "what, if any, areas may be inquired into further and what is protected by the attorney-client privilege." Colton v. United States, 306 F.2d 633, 638 (2d Cir. 1962). This inquiry "should not be designed to elicit the contents of a communication beyond the general question whether a discussion took place as to a broad subject matter." Meyer Corp. U.S. v. Alfay Designs, Inc., No. 1:10CV3647(CBA)(MDG), 2012 WL 3536987, *5 (E.D.N.Y. Aug. 13, 2012). See also, e.g., Elliott Associates, L.P. v. Republic of Peru, 176 F.R.D. 93, 97 (S.D.N.Y. 1997) (limiting inquiry to questions posed "at a sufficiently abstract level so as to not reveal the substance of the advice"); In re Dayco Corp. Derivative Securities Litigation, 102 F.R.D. 633, 636 (D.C. Ohio 1984) (declining to compel answers to "highly detailed, leading questions" about subject matter of attorney-client communications that "in effect" would have revealed their substance).

In this case, the contours of the privileged communications have been defined adequately. Plaintiff knows the dates of the

9

relevant meetings, attendees, purpose, overall subject matter, resulting decision, decision makers, their reasoning and the information on which they relied.  (See Pl.'s Br., doc. #136 at 1-4; Termination Letter, doc. #135-2 at 9-10.)  The further inquiries posed by plaintiff (Questions 1 through 5) are unnecessary and would tend to invade the protected area.  Nor is the court persuaded by plaintiff's suggestion that enforcement of the privilege will prevent him from understanding how defendants reached the decision to terminate his employment.  (Pl.'s Br., doc. #136 at 12.)  Each decision maker's basis for deciding to terminate plaintiff's employment is not privileged, see Gomez v. Metropolitan Dist., No. 3:11CV1934(JBA)(JGM), 2013 WL 2489138, at *5 (D. Conn. June 10, 2013) (party cannot conceal fact merely by revealing it to his or her lawyer), and he certainly can discover this without asking what legal advice was sought and received from outside counsel.

    2.   Work Product Doctrine

Defendants also assert that the requested information is protected attorney work product.  The work product doctrine protects "the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways prepared in anticipation of litigation."  A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 146

10

(2d Cir. 1994); see also Fed. R. Civ. P. 26(b)(3) ("party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial").  Work product is prepared in anticipation of litigation if "in light of the nature of the document and the factual situation in the particular case, the [work product] can fairly be said to have been prepared or obtained because of the prospect of litigation."  United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024, at 343 (1994)).  The proponent of the privilege bears the heavy burden of establishing a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation.  Favors v. Cuomo, 285 F.R.D. 187, 199 (E.D.N.Y. 2012).  If the proponent meets that burden, the other party must show that the work product is otherwise discoverable under Rule 26(b)(1) and that the party has a substantial need for the work product and "cannot, without undue hardship, obtain their substantial equivalent by other means."  QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co., Inc., No. 3:07CV1883(SRU), 2011 WL 692982, at *2 (D. Conn. Feb. 18, 2011).

     Plaintiff seeks to discover which executives counsel consulted in formulating defendants' response to plaintiff's

11

CHRO charge (Question 6) and why counsel asked a particular executive to attend a particular meeting (Question 8).  These questions seek to elicit the thought process of counsel in relation to anticipated litigation, and plaintiff has made no showing of substantial need for this privileged work product. See, e.g., Seven Hanover Assocs., LLC v. Jones Lang LaSalle Americas, Inc., No. 1:04CV4143, 2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005) (party is entitled to learn names of persons with knowledge of the facts but cannot compel opposing party to disclose which potential witnesses its counsel chose to interview).

    c.  Conclusion

In light of the foregoing, the Motion to Compel (doc. #135) is DENIED.  Plaintiff's request for monetary sanctions is DENIED.  See Fed. R. Civ. P. 37(a)(5)(B).

SO ORDERED at Hartford, Connecticut this 10th day of January, 2014.

                                    _____/s/_____
                                    Donna F. Martinez
                                    United States Magistrate Judge